IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTINA FAITH KENNEDY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ANDREW SAUL[1], | : | |
| Commissioner of Social Security | : | NO. 18-5258 |

O P I N I O N

JACOB P. HART                                                        DATE: December 16, 2019
UNITED STATES MAGISTRATE JUDGE

      Christina Faith Kennedy brought this action under 42 USC §405(g) to obtain review of the decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB"). She has filed a Request for Review to which the Commissioner has responded. As set forth below, Kennedy's Request for Review will be denied, and judgment granted in favor of the Commissioner.

I.      Factual and Procedural Background

      Kennedy was born on March 21, 1976. Record at 142. She obtained a college degree. Record at 177. She worked in the past as an administrator in several personal care homes for the elderly. Record at 178.

      On March 2, 2015, Kennedy filed her application. Record at 142. In it, she asserted disability as of November 10, 2014, as a result of benign hypermobility joint syndrome, fibromyalgia, chronic fatigue and pain, restless leg syndrome, sleep disturbance, depression, anxiety, and cognitive impairment. Record at 142, 176. At her hearing, Kennedy amended her onset date to May 1, 2015, and withdrew her claims of mental illness. Record at 33.

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. Pr. 25(d); and see 42 USC §405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security … .").

Kennedy's application for benefits was denied on May 13, 2015. Record at 71. She then sought *de novo* review by an Administrative Law Judge ("ALJ"). Record at 80. A hearing took place in this matter on August 29, 2017. Record at 29. On September 19, 2017, however, the ALJ issued a written decision denying benefits. Record at 12. The Appeals Council denied Kennedy's request for review, permitting the ALJ's decision to stand as the final decision of the Commissioner. Record at 3. Kennedy then filed this action.

II.  Legal Standards

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence viewed objectively as adequate to support a decision. Richardson v. Perales, supra at 401; Kangas v. Bowen, 823 F.2d 775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979). Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards. Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. § 423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we

also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv). At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v). At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted).

III.  The ALJ's Decision and Kennedy's Request for Review

The ALJ determined that Kennedy suffered from the severe impairments of mild sleep apnea, periodic limb movement disorder, benign hypermobility syndrome and possible Ehlers-Danlos syndrome. Record at 18. He found that no impairment, and no combination of impairments, met or medically equaled a listed impairment. Record at 19.

The ALJ found that Kennedy retained the following residual functional capacity ("RFC"):

> Light work … except the claimant is limited to frequently reaching overhead bilaterally; and all other reaching is limited to frequent bilaterally. The claimant's ability to handle is limited to frequent bilaterally; the claimant's ability to finger is limited to frequent bilaterally; and the claimant's ability to feel is limited to frequent bilaterally. The claimant can climb ramps and stairs occasionally; can climb ladders, ropes and scaffolds occasionally; and can balance, stoop, kneel, crouch and crawl occasionally. The claimant can work at unprotected heights occasionally; move mechanical parts occasionally; and can operate a motor vehicle occasionally. The claimant can work in extreme cold occasionally. The claimant requires a sit-stand option; and will be off-task ten percent of the day in addition to normal breaks.

Record at 19-20.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ determined that Kennedy could work as a small products assembler, light product inspector, or packer. Record at 23. He concluded, therefore, that she was not disabled. Id.

3

In her Request for Review, Kennedy raises these arguments: (1) the ALJ wrongly failed to consider certain evidence of impairment; (2) the ALJ wrongly failed to credit the opinions offered by treating care providers; (3) the ALJ erred in failing to identify fibromyalgia as a severe impairment; (4) the ALJ erred in failing to identify the intervals at which Kennedy must alternate sitting and standing; (5) the ALJ wrongly relied on the "sit and squirm test"; and (6) the ALJ failed to consider Kennedy's excellent work history.

IV.  Discussion

A.  The ALJ's Treatment of the Evidence

In ten pages of her brief, Kennedy identifies over fifteen individual treatment notes which she claims were either ignored or misinterpreted by the ALJ. Brief at 11-21. She also complains that the ALJ failed to evaluate the Disability Report she filed in connection with her application, and wrongly handled the evidence of Ehlers-Danlos syndrome.

In a case such as this, with several hundred pages of medical evidence, an ALJ's duty to consider and evaluate the medical evidence clearly does not compel him to discuss every treatment note in his decision. See Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001). Nevertheless, Kennedy concludes this section of her brief by writing: "Over and over, the ALJ either cherry-picked a portion of the notes to fit his decision or just ignored the Plaintiff's treatment notes altogether." Brief at 21. This, if true, would be error.

There is some confusion, both on the part of the ALJ, and on the part of Kennedy's counsel, regarding Ehlers-Danlos syndrome. As Kennedy notes, the ALJ expressed some skepticism at the hearing regarding the origin and reliability of the diagnosis. Record at 39-40. Kennedy's counsel agreed at the hearing that the actual Ehlers-Danlos diagnosis was missing from the record. Record at 41.

4

Apparently, however, joint hypermobility syndrome is a mild form of Ehlers-Danlos syndrome.  [Https://www.ncbi.nim.nih.gov/m/pubmed/23407074/](Https://www.ncbi.nim.nih.gov/m/pubmed/23407074/).  (Visited December 10, 2019). Therefore, when Stephanie Morris, DO, Kennedy's treating rheumatologist, diagnosed her with benign hypermobility syndrome on September 15, 2014, this did constitute a diagnosis of Ehlers-Danlos syndrome.  Record at 330.

Accordingly, the ALJ was mistaken when he wrote in his decision that the record did not "reflect such a diagnosis or assessment."  Record at 18.  However, the ALJ went on to write: "Even so, the undersigned gives the claimant the benefit of the doubt, and has considered the symptoms of this alleged condition in forming the residual functional capacity below."  Id.  In other words, he wrote his decision assuming that Kennedy did, indeed, suffer from Ehlers-Danlos syndrome.  Record at 20.  He recognized that the Ehlers-Danlos/hypermobility syndrome was related to Kennedy's joint pain.  Id.  For this reason, the ALJ's failure to recognize the relationship between the two diagnoses is of little importance.

As to the ALJ's treatment of the evidence, some of Kennedy's criticisms are based on factual error.  For one thing, she has accused the ALJ of failing to discuss a treatment note regarding April 15, 2015, MRIs of her cervical and lumbar spine, and of mistakenly writing that the MRI was of her "left hand."  Brief at 14, citing Record at 338-9, 363-4.  In fact, the ALJ accurately cited the April 15, 2015, MRI of Kennedy's cervical spine, and a May 10, 2017, MRI of her lumbar spine.  Record at 18, 363-4, 392.  He was also accurate in reporting that the lumbar spine MRI was interpreted as showing only "mild degenerative changes."  Record at 392.  An MRI of the cervical spine, also performed on May 10, 2017, also showed only "minor" abnormalities.  Record at 391.

Later in his decision, moreover, the ALJ correctly cited a January 30, 2016, letter to Dr. Morris from Premier Imaging which described a normal MRI of Kennedy's left hand. Record at 20, 494. This was significant because, a month earlier, Kennedy appeared at the Paoli Hospital emergency room complaining of pain in her left hand and left leg. Record at 550.

Kennedy also complains that the ALJ ignored evidence of muscle strains: an April, 2015, MRI of her right ankle, and December 15, 2015, testing of her left shoulder. Record at 340, 341. These muscle strains would not be important for Social Security purposes unless the strain lasted twelve months or more. They could also be important in showing a series of injuries which supported Dr. Morris's diagnosis of Ehlers-Danlos syndrome/benign hypermobility syndrome. In that case, however, the ALJ's failure to mention them was clearly not harmful since he accepted that diagnosis.

Most of the other records which the ALJ did not mention contain primarily subjective complaints of pain and lethargy. The ALJ recognized that "the claimant testified to having a myriad of problems and pain issues at the hearing, in addition to problems with fatigue." Record at 20. Perhaps this was overly cursory, and the ALJ should have acknowledged that Kennedy's testimony was supported by consistent complaints over the years to multiple physicians. Nevertheless, even this brief description of Kennedy's testimony indicates that ALJ was aware of her subjective allegations.

Further, as the ALJ noted, "there was also doubt expressed by at least two medical examiners concerning the consistency, or lack thereof, of the claimant's symptoms with the objective physical exams and test results." Record at 20. The ALJ cited records from a May 9, 2017, incident where Kennedy appeared at Paoli Hospital's emergency room with complaints of severe head and neck pain, as well as dizziness, left-sided weakness, and hallucinations. Record

at 370. After obtaining normal CT results, a review of recent blood work, and excluding migraine and trauma, the emergency room staff wrote that it could not identify an "emergent explanation" for Kennedy's symptoms. Record at 373. They also noted: "Unable to raise L leg on exam, but able to ambulate to the bathroom without trouble, moving legs when I am not in the room." Record at 371.

Somewhat similarly, George J. Hart, MD, FAAN, a neurologist at Bryn Mawr Hospital reported on May 15, 2017, that "there was poor effort in left lower extremity". Record at 375. He wrote: "I see no clear etiologies from the standpoint [*sic* "neurological standpoint"?] for any of her complaints." Id. On June 7, 2017, Dr. Hart again reported "poor effort in left lower extremity." Record at 443. Kennedy had full strength in all extremities, with normal muscle tone and bulk. Id. Further, the result of an EMG and nerve conduction study Dr. Hart ordered were normal, so he ruled out neuropathy, myopathy, and radiculopathy. Record at 444.

The ALJ also cited a physical therapy evaluation dated July 14, 2017. Record at 527. There, the therapist wrote that Kennedy showed "apparent difficulty in completing volitional movements with the left lower extremity upon command, although a display of effort with facial grimacing and altered breathing is noted." Record at 530. This, despite the fact that her gait was almost normal, her muscles appeared normal on distraction testing, and no atrophy was present in the leg. Id. The therapist concluded: "The patient's presentation is inconsistent with typical organic causes of musculoskeletal weakness." Id.

Kennedy argues that the ALJ's use of the physical therapy note was unfair, because she is claiming to suffer from an *atypical* cause of musculoskeletal weakness. Whether or not there is any medical basis for this claim that no organic cause is observable for weakness caused by Ehlers-Danlos syndrome, this certainly does not explain the several observations of poor effort.

7

The Commissioner has also pointed out that Madeleine Heaney, MD, Kennedy's primary case physician, wrote on July 17, 2017, that Kennedy gave "variable effort on formal testing", and had normal muscle tone and bulk. Record at 432. She added: "Very dramatic description of symptoms." Id. The ALJ did not rely on this note, but it is relevant to a consideration of the evidence which would be considered if Kennedy obtained remand.

As a whole, therefore, it does not appear that the ALJ "cherry-picked" evidence. Rather, it seems that, despite Kennedy's persistent complains of pain and fatigue, the evidence of poor effort led the ALJ to conclude that – while Kennedy was limited by her impairments – she was not disabled.

B.  The Opinion Evidence

Dr. Heaney, the primary care physician, submitted a Medical Source Statement dated April 29, 2015. Record at 324. In it, she indicated that Kennedy could sit for four hours at a time and for seven hours in an eight-hour workday, and could stand or walk for only two hours in an eight-hour workday. Record at 325. She also opined that Kennedy could reach, handle, finger, feel and push/pull only occasionally. Record at 326. Dr. Heaney attributed these limitations to chronic musculoskeletal pain "especially in hands", fatigue, and a torn Achilles tendon in the right ankle. Record at 325, 326.

The ALJ wrote:

The undersigned gives this opinion little weight, as the assessment is dated and not consistent with the medical record as a whole, and in particular the diagnostic test results. The assessment is also not consistent with those of at least two medical examiners who expressed doubt concerning the claimant's symptoms as compared with the objective physical exams and test results.

Record at 21. (Internal citations omitted).

Kennedy argues that Dr. Heaney's findings were consistent with Dr. Morris's notes. However, the notes that Kennedy cites only reflect her subjective complaints of hand pain. As discussed above, the ALJ discussed the normal January 30, 2016, MRI of Kennedy's left hand. Record at 20, 494. As also noted, EMG and nerve conduction testing was normal in all four of Kennedy's extremities. 20, 444. Kennedy also points to November 30, 2016, treatment notes by rheumatologist Liliane Min, MD. However, Dr. Min noted only "mild swelling" in two metacarpals on Kennedy's left hand, which was noted to be "non tender." Record at 367. Dr. Heaney's report was written before all of the foregoing occurred.

It is also notable that the state agency reviewing physician, Michael Brown, DO, found on May 13, 2015, that Kennedy had no medically determinable impairment at all. Record at 68. He cited a November 21, 2014, note from Paoli Hospital which described Kennedy as a patient "with neurologic symptoms and completely negative physiologic workup." Record at 270. The ALJ, however, gave Dr. Brown's opinion little weight, finding that the record did contain evidence of physically determinable impairments. Record at 21.

Clearly, the ALJ did not find that either Dr. Heaney's opinion or Dr. Brown's opinion fully captured the contents of the medical record. For this reason, he reached an RFC assessment which described limitations somewhere between those described by Dr. Heaney and Dr. Brown. He appropriately supported his decision with accurate citations to the medical evidence. In these circumstances, there is no apparent error in the ALJ's treatment of Dr. Heaney's report.

C.   Fibromyalgia

In his decision, the ALJ explained that he did not find Kennedy's fibromyalgia to be a medically determinable impairment because "it [did] not appear that the requirements of Social Security Ruling 12-2p were met." Record at 18.  The ALJ explained at the hearing that he could not find that other disorders which might cause Kennedy's joint pain had been ruled out, as the ruling required.  Record at 41-2. Social Security Ruling 12-2p precludes the Agency from finding a medically determinable impairment of fibromyalgia unless "there is evidence that other disorders were excluded as possible causes of the pain."

Kennedy claims the ALJ erred in this regard.  She points out that Dr. Morris, who originally diagnosed her with Ehlers-Danlos syndrome, diagnosed her with fibromyalgia on March 1, 2015, and thereafter treated the two as separate diagnoses.  Record at 330, 356.  Dr. Morris also found Kennedy to suffer from the painful "trigger points" which are characteristic of fibromyalgia.  Id.

The ALJ did not ignore this issue, however.  At the hearing, he stated that the finding of trigger points was not satisfactory for the purposes of SSR 12-2p, because Ehlers-Danlos/hypermobility was never ruled out as a source for Kennedy's pain.  Record at 42-3.  In other words, for the ALJ to find that fibromyalgia was a medically determinable impairment, that diagnosis would have to supplant Ehlers-Danlos, and not merely co-exist with it, because they both caused the same symptoms of muscle pain (and, he might have added, fatigue).
As a practical matter, because both ailments cause the same symptoms, the ALJ's evaluation of Kennedy's functioning with Ehlers-Danlos/benign hypermobility syndrome was identical to the analysis he would have made if he had found fibromyalgia to be a severe impairment.

10

It should be noted that, if the ALJ had only a diagnosis of fibromyalgia before him, Kennedy's normal objective testing would have seemed less significant, because it is widely accepted that those who suffer from fibromyalgia frequently have normal testing. See Alvarado v. Chater, Civ. A. No. 96-2710, 1997 WL 43008 at *1 (E.D. Pa. Jan. 24, 1997), quoting Sarchet v. Chater, 78 F.3d 305, 306-7 (7th Cir. 1996) and Preston v. Secretary of Health and Human Services, 854 F.2d 815, 817 (6th Cir. 1988).

Nevertheless, even in fibromyalgia cases, the ALJ must compare the objective evidence to the claimant's subjective complaints in determining the extent to which a claimant is limited, and is permitted to reject plaintiff's subjective testimony as long as he provides a sufficient explanation for doing so. Walls v. Berryhill, Civ. A. No. 16-245, 2019 WL 106293 (D. Del. Mar. 6, 2019); Nocks v. Astrue, 626 F. Supp.2d 431, 446 (D. Del. 2009). As discussed above, the ALJ adequately explained why he found Kennedy to be less limited than she claimed.

D.   The Sit/Stand Option

Kennedy maintains that the ALJ erred in finding that she needed a sit/stand option without specifying the intervals at which she would need to alternate sitting and standing. She points to the vocational expert's testimony that the jobs available would depend on whether an individual could alternate every hour, or every ten to fifteen minutes. Record at 59-61.

The jobs identified by the ALJ in his decision as suitable for Kennedy, however, all provided the opportunity to sit and stand at will. Record at 60-61. In other words, all of the jobs identified by the ALJ would permit Kennedy to alternate sitting and standing at any interval she chose. Clearly, the ALJ did not err in this regard.

E.   The "Sit and Squirm" Test

In his decision, the ALJ wrote:

> The Administrative Law Judge's observation at the hearing was that the clamant appeared to sit comfortably for at least 45 minutes before she started fidgeting and had to get up. Although this is not very probative, it is consistent with the mild diagnostic test results. The undersigned recognizes that observations by an Administrative Law Judge at a hearing, alone, do not constitute substantial evidence. However, the Administrative Law Judge considers these observations along with other inconsistencies present in the record as to the degree of pain and functional limitations allegedly experienced by the claimant when determining the consistency of the claimant's allegations with the objective medical record.

Record at 21.

It has long been decided in this Circuit that an ALJ cannot base his decision on his own unsupported lay observations of a client's behavior at the hearing. Van Horn v. Schweiker, 717 F.3d 871, 74 (3d Cir. 1983). In other words, an ALJ cannot "subjectively arrive at an index of traits which he expects the claimant to manifest at the hearing", and then deny the claim if the claimant "falls short of the index." Id. at note 3, citing Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982). This approach, by which an ALJ decides "the claimant doesn't look mentally ill to me," or "he doesn't seem to me to be in pain," has been called the "sit and squirm test." Id.

Kennedy claims that the ALJ here wrongly relied on the "sit and squirm" test "rather than examining the record and considering objective medical evidence." Brief at 27. She may be correct to the extent that the ALJ's opinion as to whether she seemed "comfortable" may be even less probative than the ALJ himself admitted. It is unclear whether the ALJ was, in fact, entitled to rely on his opinion in this regard at all. In Freeman, the Eleventh Circuit Court of Appeals wrote that an attempt to "match the observable symptoms against the testimony" was unacceptable. 681 F.2d at 731.

Nevertheless, the ALJ clearly did not rely on his own observation *rather* than on the medical record. As described in the other sections of this opinion, the ALJ thoroughly discussed the medical record, including a great deal of objective testing. His opinion is therefore supported by substantial evidence even if the comment set forth above is ignored. For this reason, remand is not necessary to address this issue.

F.      Kennedy's Work History

Finally, Kennedy argues that the ALJ erred in failing to consider her "excellent" work history. She worked steadily for seven years, took seven years off when her children were small, and then worked steadily for another six years. Record 151-2.

The Social Security regulations provide that a claimant's prior work record is one of many factors which an ALJ will consider in evaluating the claimant's symptoms. 20 CFR §404.1529(c)(3). Kennedy has cited this regulation, and has also cited a number of cases which provide that a good work history enhances a claimant's "credibility."

The cases Kennedy has cited are somewhat outdated. As explained in SSR 16-3p, the agency has now rejected the concept of a "credibility" finding, because "subjective symptom evaluation is not an examination of an individual's character." 2017 WL 5180304 at *2 (October 25, 2017). The ruling states:

> Adjudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments. In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities … .

Id. at *11.

As such, it is not clear how much importance can be given to factors which are irrelevant to Kennedy's symptoms during her claimed period of disability, such as her employment history. In any case, even when a claimant's "credibility" was at issue, his or her work history was not dispositive of the issue, and a failure to discuss it did not require remand. See Corley v. Barnhart. Civ. A .No. 03-4385, 102 F. App'x 752, 755 (3d Cir. 2004); Light v. Berryhill, Civ. A. No. 17-1293, 2018 WL 5798596 at *7 (M.D. Pa. Aug. 13, 2018); Salazar v. Colvin, Civ. A. No. 12-6170, 2014 WL 6633217 at *7 (E.D. Pa. Nov. 24, 2014).

V.  Conclusion

In accordance with the above discussion, I conclude that the decision of the Appeals Council should be affirmed, and judgment entered in favor of the Commissioner.

BY THE COURT:

/s/Jacob P. Hart
_____

JACOB P. HART
UNITED STATES MAGISTRATE JUDGE